UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 DEC 19 PM 3: 19

CLERK

BY _____
DEPUTY CLERK

INDUSTRIAL TOWER AND )
WIRELESS, LLC, )
 )
*Plaintiff*, )
 )
v. ) Civil Action No. 5:22-cv-221
 )
ANTHONY Z. ROISMAN, MARGARET )
CHENEY, AND RILEY ALLEN, as they )
are members of the STATE OF )
VERMONT PUBLIC UTILITY )
COMMISSION, )
 )
*Defendants*. )

## COMPLAINT

Industrial Tower and Wireless, LLC ("Industrial"), by and through its counsel, MSK Attorneys, for its Complaint against the three members of the Vermont Public Utility Commission ("Defendants"), alleges as follows:

### INTRODUCTION

1. Industrial brings this Complaint under Section 704 Telecommunications Act of 1996, as codified at 47 U.S.C. § 332(c)(7) ("TCA"), for expedited hearing and relief, for declaratory judgment, and for injunctive relief due to the "failure to act" by the members of the State of Vermont Public Utility Commission ("PUC") within 150 days, or otherwise a reasonable period of time, on Industrial's application to construct a personal wireless service facility, consisting of a 140-foot above ground level ("AGL") telecommunications tower ("Tower"), an 80-foot by 80-foot fenced compound ("Compound"), and associated equipment used for the provision of Industrial's personal wireless services.

2. The property on which these improvements will be located is an approximately 506-acre parcel owned by Matthew Hull off of Bordoville Road in the Town of Enosburgh, Vermont ("Tower Site"). We refer to the entire proposed facility as the "Project" or the "Proposed Facility."

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 47 U.S.C. § 332(c)(7)(B)(v) because Industrial has been adversely affected and aggrieved by Defendants' failure timely to act on its application, and 28 U.S.C. § 1331, because this action presents a federal question that arises under the laws of the United States -- the TCA.

4. An expedited hearing is required pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

5. Venue exists in this District pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in this District.

6. In addition, venue exists in this District pursuant to 28 U.S.C. § 1391(b)(2) because all of the events giving rise to Industrial's claims against Defendants occurred within this District and because the property that is the subject of this action is situated in this District.

## PARTIES

7. Industrial is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal office located at 40 Lone Street, Marshfield, Massachusetts 02050.

8. The PUC has a physical address of 112 State Street, Montpelier, Vermont 05620. Pursuant to *Ex parte Young*, 209 U.S. 123 (1908), the PUC itself cannot be a party to this action. However, its members can be and are named as such in this Complaint.

9. Defendant Anthony Z. Roisman is the Chair of the PUC and resides in the Town of Weathersfield, Vermont.

10. Defendant Margaret Cheney is a member of the PUC and resides in the Town of Norwich, Vermont.

11. Defendant Riley Allen is member of the PUC and resides in the Town of Montpelier, Vermont.

## FACTS RELEVANT TO INDUSTRIAL'S CLAIMS

### Industrial's Federally-Licensed Services

12. Industrial is a "Specialized Mobile Radio" licensee of the Federal Communications Commission ("FCC"), providing a variety of land mobile communications services throughout most of New England and part of Florida.

13. As a for-profit provider of interconnected services to the public, Industrial is a provider of "commercial mobile services" as defined in the TCA, 47 U.S.C. § 332(d)(1).

14. These services are "personal wireless services" for commercial and public entities for which Industrial has erected systems of communications towers and facilities in New England and Florida.

15. Industrial is therefore a personal wireless service provider under the TCA, 47 U.S.C. § 332(1), and a "company" as defined by 30 V.S.A. § 201, subject to the jurisdiction of the PUC.

16. Industrial holds an FCC license with call sign WFRM297 for the provision of Specialized Mobile Radio ("SMR") services in the MTA001 – New York Submarket 4, which includes the Vermont counties of Addison, Bennington, Caledonia, Chittenden, Essex, Franklin,

Grand Isle, Lamoille, Orange, Orleans, Rutland and Washington. *See* attached **Exhibit 1** (license) and **Exhibit 2** (list of included counties).

17.   In addition, Industrial holds an FCC license with the call sign KNNX992 for the provision of SMR services in the MTA008, BTA227 – Keene, New Hampshire and BTA249 – Lebanon-Claremont, New Hampshire Submarkets, which include the Vermont counties of Windsor and Windham. *See* attached **Exhibit 3** (license) and **Exhibit 4** (list of included counties).

18.   Industrial also constructs, owns and operates wireless service facilities, including communications towers, transmitters and antenna structures for other providers of personal wireless services, including personal communications service ("PCS") and cellular service carriers.

19.   These facilities are constructed with the intent to lease space to such providers as "co-location" sites to reduce tower proliferation and advance the provision of wireless services.

**The Proposed Project**

20.   Industrial went through an extensive process to determine the most suitable location for the Tower Site. That process included steps to mitigate the impact of the Tower on the surrounding areas.

21.   On June 8, 2022, Industrial submitted an application ("Application") to the PUC for a Certificate of Public Good ("CPG"). Therein, Industrial described its project (the "Project") as follows:

a.   Industrial intends to construct a telecommunications facility on a portion of the approximately 506-acre parcel of land owned by Matthew Hull off of Bordoville Road in Enosburgh, Vermont. Industrial refers to the project as "Enosburgh." The property owner has given Industrial permission to proceed with this Application. The coordinates for the Project are

latitude 44°50'27.60" North and longitude 72°48'39.42" West. [*See* attached Permit Plans, **Exhibit 5** to this Complaint, for a visual depiction of the Project's location.]

    b.    Industrial will create an 80' x 80' "Compound" enclosed by an 8' high chain link fence, with a locked gate. Within the Compound, Industrial will construct a 140' above ground level ("AGL") telecommunications self-supporting lattice tower ("Tower"). Six (6) thin "whip" antennas ("Antennas") will be mounted at 140' AGL of the Tower. Five (5) transmit Antennas will extend upward to a maximum height of 153.0' AGL. The receive Antenna will reach downward from the 140' AGL mounting level. Each Antenna will measure approximately 13' long and 2.75" in diameter.

    c.    Industrial will place an equipment cabinet ("Cabinet") on a 10' by 10' concrete pad inside the Compound, to the northwest of the Tower. The Cabinet will contain the electronics equipment necessary for the operation of the Project.

    d.    Co-axial cables from the mounted Antennas will descend on the inside of the Tower. The cables will exit near the base of the Tower and will connect with the Cabinets via a proposed cable bridge.

    e.    To provide access to the Compound, Industrial proposes to follow an existing trail from Bordoville Road into a cleared area and then into the Compound ("Access"). The Access and utilities will run within a 25' wide access and utility easement. Underground utilities will follow the Access from the closest existing utility connection point on Bordoville Road to the Compound and will be placed in a trench adjacent to the Access.

    f.    Approximate clearing limits are shown on the enclosed plans [Exhibit 5 hereto]. The contractor will limit clearing to the minimum required to construct the Access and Compound, which is estimated to be approximately 22,256 square feet. Culverts, check dams, water bars, and

silt fencing will be placed along the Access and at the Compound as indicated on the enclosed plans to control erosion both during and after construction. Construction shall meet the requirements of the State of Vermont Low Risk Site Handbook for Erosion Prevention and Sediment Control. After the completion of construction, the amount of new impervious surface area will be approximately 6,724 square feet.

22. To show that it had explored the possibility of co-locating its facility on an existing telecommunications structure, Industrial included the following passages in its Application:

> The Project cannot be located on or at an existing telecommunications facility. There are no such facilities within the area to be served by Industrial's Enosburgh site. In particular, Industrial examined the possibility of co-locating its antennas and other equipment at the only two (2) existing towers within a 10-mile radius of the location for its Enosburgh site. Due to distance, intervening terrain and vegetation, none of those towers would meet Industrial's objectives for this site. [*See* Propagation Maps and spreadsheet of locations considered in attached **Exhibit 6** and **Exhibit 7** to this Complaint.]
>
> The Route 108 corridor is a very difficult area to cover because it is a narrow, winding path that runs between mountainous terrain. That topography presents severe challenges with signal propagation. The propagation plots that Kevin Delaney created for this site illustrate these difficulties.
>
> In particular, intervening terrain causes a sharp drop off in coverage as illustrated in those plots. Moreover, the population density is quite low, so Industrial (and other carriers) seeks to provide coverage with the least number of facilities possible. The existing facilities both within the Town of Enosburgh and the surrounding towns within a radius of ten (10) miles from the proposed site do not provide adequate coverage to the area being served by this project. In fact, research of the areas confirmed that there are only (2) two existing towers within a (10) mile radius of the proposed site. Those existing towers are simply too far away or not tall enough to provide the needed.

23. The Proposed Facility will be unmanned, will not generate wastewater, and will not involve on-site storage or disposal of toxic or hazardous waste.

24. Industrial's highly trained crews are the only persons who will be allowed to climb the Tower or work on equipment on the Tower.

25. Industrial has attempted to secure the commitment of other carriers to co-locate their equipment at the Tower Site.

26. All of the commercial carriers so approached have deferred their decision until Industrial obtains its CPG for the Project.

27. The St. Albans Police Department has committed to co-locating its equipment at the Tower Site to improve the level of its communications in Franklin County. Industrial has agreed to allow this co-location with no rent to be charged.

28. The Proposed Facility will be visited by both Industrial personnel, carrier technicians and subcontractors as necessary for troubleshooting, security inspections, maintenance of the facility, equipment inspections and maintenance and repairs.

29. Industrial will monitor the Proposed Facility remotely 24 hours a day.

30. There will be no water, sewer or septic service at the Proposed Facility. The only utilities will be for electric power, natural gas and fiber optic cable.

**Proceedings before the PUC**

31. On March 4, 2022, Industrial filed with the PUC the advance notice of its intention to file the Application.

32. As required by 30 V.S.A. § 248a(e), Industrial filed that notice ("60-day Notice") at least 60 days before it filed its application. *See* attached **Exhibit 8**.

33. Industrial also complied with the remaining provisions of § 248a(e) by serving the 60-day Notice on the entities and individuals required to receive that Notice.

34. On June 8, 2022, more than 60 days after the filing and service of the 60-day Notice, Industrial filed its Application – consisting of, *inter alia*, a Petition, Proposed Findings, Conclusions and CPG, Prefiled Testimony, Affidavits, Exhibits and various required Certifications – with the PUC. The entire Application (without the numerous Exhibits) is attached as **Exhibit 9**.

35. On June 10, 2022, the PUC issued a Memorandum stating its determination that Industrial's Application was "administratively complete" and assigning it Case Number 22-2120-PET. *See* attached **Exhibit 10**.

36. As stated in the PUC's June 10, 2022 Memorandum, all "interested parties" had until July 12, 2022 by which to file with the PUC their comments, motions to intervene and requests for hearing on the Application.

37. On July 6, 2022, the Vermont Department of Public Service ("DPS") filed a Motion for Extension of Comment Period seeking to extend the July 12th deadline by two weeks to July 26, 2022. *See* attached **Exhibit 11**. Industrial assented to the DPS's Motion.

38. On or before July 26, 2022, various individuals and entities submitted comments, motions to intervene ("Motions") and requests for a hearing.

39. On August 2, 2022, the PUC issued a Memorandum asking that Industrial file a response to the Motions on or before August 12, 2022. *See* attached **Exhibit 12**.

40. On August 12, 2022, Industrial filed and served its Consolidated Response to Public Comments and Comments Submitted by the Department of Public Service and the Northwest Regional Planning Commission. *See* attached **Exhibit 13**.

41. On August 19, 2022, the PUC issued a Procedural Order Granting Motions to Intervene and Requests for Hearing ("Procedural Order"). *See* attached **Exhibit 14**. The Procedural Order stated that a hearing would be necessary but did not set the date for that hearing.

42. On September 29, 2022, the PUC issued a Notice of Hearing for the purpose of holding a scheduling conference to determine the date of the hearing on the merits ("Hearing"). *See* attached **Exhibit 15**. The scheduling conference took place on October 6, 2022.

43. During the October 6th scheduling conference and in "Petitioner's Proposed Schedule" filed and served later that day, Industrial made clear that the PUC must hold the Hearing soon enough to allow the PUC to reach its decision on the merits as required by the TCA's timing requirements as interpreted in subsequent FCC Orders. *See* attached **Exhibit 16**, requesting a Hearing during the week of October 24-28th so that the PUC could comply with Industrial's then-current interpretation of those timing requirements.

44. Nonetheless, on October 20, 2022, the PUC issued a Scheduling Order setting a date of January 12, 2023 for the Hearing. *See* attached **Exhibit 17**. The Scheduling Order did not specify when the PUC would issue a decision on the Application.

**TCA "Shot Clock" Violation**

45. Pursuant to 47 U.S.C. § 332(c)(7)(B)(ii), a state or local government must act on a wireless siting application "within a reasonable period of time after the request is duly filed."

46. In November 2009 the FCC, relying on its statutory authority to implement the TCA, issued a declaratory ruling (the so-called "Shot Clock Ruling") holding that there is a rebuttable presumption that "a reasonable period of time" to act under § 332(c)(7)(B)(ii) for a new tower site is 90 days for collocation of antennas on existing structures and 150 days for all other applications. *See In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994, 14001, ¶¶ 32, 49 (FCC Nov. 18, 2009), *aff'd*, *City of Arlington, Tex. v. FCC*, 668 F.3d 229 (5th Cir. 2012), *aff'd*, 569 U.S. 290 (2013).

47. As shown above, on June 8, 2022, Industrial filed its complete Application for a new tower with the PUC.

48. One hundred fifty days from June 8, 2022 passed on Saturday, November 5, 2022. The next business day was Monday, November 7, 2022.

49. Under the FCC's Shot Clock Ruling, the reasonable period of time may be extended beyond the 150-day period by mutual consent. *See In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994, 14001, ¶ 49 (FCC Nov. 18, 2009).

50. By consenting to the DPS's requested two-week extension in DPS's July 6, 2022 Motion, Industrial extended the 150-day period to Monday, November 21, 2022.

51. Therefore, the PUC was required to issue a decision on the merits on Industrial's Application on or before November 21, 2022. The PUC failed to do so.

## COUNT

### VIOLATION OF TCA - FAILURE TO ACT - UNREASONABLE DELAY (VIOLATION OF FCC SHOT-CLOCK ORDER)

52. Industrial repeats and re-alleges all of the above paragraphs.

53. The Shot Clock Ruling creates a presumption that a state or local government that fails to act on a zoning application within the applicable 90 or 150-day time frame has failed to act within a reasonable period of time as required under the TCA.

54. The FCC recognized that there are certain circumstances under which the Shot Clock's time periods could be tolled or extended: (1) by mutual consent, of the applicant and the local government; or (2) if a provider's application is incomplete.

55. If an application is incomplete, then the time it takes for the provider to respond to a request for additional information will not count toward the 90 or 150-day time frame, but only

if the state or local government notifies the applicant, within 30 days of receiving the application, that the application is incomplete.

56. Industrial filed its Application with the PUC on June 8, 2022. The PUC deemed that Application complete on June 10, 2022.

57. Industrial agreed to extend the time for a decision by the PUC for a period of 14 days between July 12, 2022 and July 26, 2022.

58. Industrial, the DPS, the Northwest Regional Planning Commission and several abutting landowners have filed extensive comments, motions and other information regarding the Application.

59. The 150-day period of time under the Shot Clock Ruling by which the PUC was required to act on Industrial's Application, as extended, expired on or about November 21, 2022.

60. The PUC scheduled the Hearing on the merits of Industrial's Application for January 12, 2023 despite Industrial having notified the PUC on October 6, 2022 that such scheduling would violate the TCA and the Shot Clock Ruling.

61. To date, the PUC has not voted to approve or deny the Application, issued a dispositive written decision or otherwise acted on the merits of the Application.

62. The PUC violated the Shot Clock Ruling and the provisions of § 332(c)(7)(B)(ii) by failing to act within a reasonable period of time on Industrial's Application.

63. This action is brought pursuant to Section 332(c)(7)(B)(v) within 30 days following expiration of the 150-day period for the PUC to act on Industrial's Application under the Shot Clock Ruling.

## **PRAYER FOR RELIEF**

WHEREFORE, Industrial requests respectfully that this Honorable Court issue the following relief:

1. Enter judgment for Industrial that the PUC failed to act on Industrial's Application within a reasonable period of time under the TCA, resulting in a TCA violation; and ordering that the PUC issue the Certificate of Public Good to Industrial to construct and operate the Proposed Facility per the Application;

2. Order that the PUC, and all employees, officials, representatives, and agents thereof, are enjoined from denying any further permits and approvals necessary to construct the Proposed Facility and/or from otherwise interfering with the development of the Proposed Facility;

3. Grant temporary, preliminary, and permanent injunctive relief, ordering that Industrial is immediately permitted to construct and operate the Proposed Facility in accordance with its Application, including issuance of the necessary CPG; and

4. Award Industrial such other and further relief as this Court may deem just and proper.

*Signatures on Following Page*

Dated:  December 19, 2022
        Burlington, Vermont

                                        Respectfully submitted,

                                        MSK ATTORNEYS

By: _____
       Brian J. Sullivan
       Daniel A. Seff

       275 College Street
       P.O. Box 4485
       Burlington, VT 05406-4485
       Phone: (802) 861-7000
       Fax: (802) 861-7007
       Email: bsullivan@mskvt.com
       Email: dseff@mskvt.com

       *Attorneys for Plaintiff Industrial Tower and Wireless, LLC*